```
                   ─TRANSCRIBED FROM DIGITAL RECORDING─
```

05:12:01  1                    UNITED STATES DISTRICT COURT

2                          DISTRICT OF NEVADA

3

4   UNITED STATES OF AMERICA,      )  Case No. 2:21-mj-109-DJA
                                   )
5            Plaintiff,            )  Las Vegas, Nevada
                                   )  Monday, February 1, 2021
6        vs.                       )  Courtroom 3A
                                   )
7   NATHANIEL J. DEGRAVE,          )  INITIAL APPEARANCE IN RULE
                                   )  5(c)(3) PROCEEDINGS VIA
8            Defendant.            )  VIDEOCONFERENCE
    ─────────────────────────────  )

9                                     C E R T I F I E D   C O P Y

10

11

12                       TRANSCRIPT OF PROCEEDINGS

13            BEFORE THE HONORABLE DANIEL J. ALBREGTS,
                     UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16   For the Plaintiff:

17          UNITED STATES ATTORNEY'S OFFICE
            BY:  NICHOLAS D. DICKINSON, AUSA
18          501 Las Vegas Boulevard South, Suite 1100
            Las Vegas, NV 89101
19          (702) 388-6336

20   (Appearances continued on Page 2)

21   DIGITALLY RECORDED:          Liberty Court Recorder (LCR)
                                  4:42:50 p.m. - 5:32:20 p.m.
22
     RECORDED BY:                 J. Ries
23
     TRANSCRIBED BY:              Heather K. Newman
24                                (702) 471-0002

25   Proceedings recorded by electronic sound recording; transcript
     produced by machine shorthand and computer-aided transcription.

————TRANSCRIBED FROM DIGITAL RECORDING————

1  <u>APPEARANCES CONTINUED:</u>

2  For the Defendant:

3         FEDERAL PUBLIC DEFENDER'S OFFICE
          BY:  CRISTEN THAYER, AFPD
4         411 East Bonneville Avenue, Suite 250
          Las Vegas, NV 89101
5         (702) 366-6577

6  Also present:

7         Misty Sanchez
          United States Pretrial Services
8

9                              *   *   *   *   *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                    ─TRANSCRIBED FROM DIGITAL RECORDING─
```

1          LAS VEGAS, NEVADA; MONDAY, FEBRUARY 1, 2021; 4:42:50 P.M.

2                              --oOo--

3                        P R O C E E D I N G S

05:12:02  4          COURTROOM ADMINISTRATOR:  United States of America vs.

05:12:07  5   Nathaniel DeGrave, 2:21-mj-109-DJA.  This is an initial

05:12:19  6   appearance on a Rule 5.

05:12:23  7          Counsel, make your appearance, please.

05:12:26  8          MR. DICKINSON:  Nicholas Dickinson for the

05:12:28  9   United States.

05:12:28  10          THE COURT:  Good afternoon, Mr. Dickinson.

05:12:34  11          MS. THAYER:  Good afternoon.  Cristen Thayer for

05:12:41  12   Mr. DeGrave, who is present and appearing by video at the

05:12:46  13   Nevada Southern Detention Center.

05:12:48  14          THE COURT:  Good afternoon, Ms. Thayer.  Have you --

05:12:51  15   and is it DeGrave or Degrauve (phonetic)?

05:12:59  16          THE DEFENDANT:  DeGrave.

05:13:00  17          THE COURT:  All right.  Mr. DeGrave.

05:13:02  18          Ms. Thayer, have you had a chance to talk to

05:13:05  19   Mr. DeGrave about appearing via videoconference as opposed to

05:13:10  20   in person given the pandemic?

05:16:19  21          MS. THAYER:  Yes, Your Honor, and he has agreed to

05:16:21  22   appear by video to have the appearance today.

05:16:27  23          THE COURT:  Mr. DeGrave, is that true, rather than

05:16:35  24   having yourself transported down to Las Vegas for an in-person

05:16:41  25   hearing, you agree to appear via videoconference as a result of

───TRANSCRIBED FROM DIGITAL RECORDING───

05:16:46  1  the pandemic?

05:16:48  2          THE DEFENDANT:  Yes, Your Honor.

05:16:49  3          THE COURT:  All right.  Well, thank you, Mr. DeGrave.

05:16:51  4  I appreciate that.

05:16:52  5          Good afternoon.  My name is Daniel Albregts.  I'm a

05:17:21  6  United States Magistrate Judge for the District of Nevada and

05:17:24  7  you've been brought before the Court on a complaint which was

05:17:26  8  filed on January 28th, 2020, and that complaint originates out

05:17:31  9  of the District of Columbia.

05:17:32  10          Is your true name Nathaniel DeGrave?

05:17:40  11          THE DEFENDANT:  Yes, it is, Your Honor.

05:17:41  12          THE COURT:  How old are you, sir?

05:17:43  13          THE DEFENDANT:  I am 31.

05:17:45  14          THE COURT:  How far have you gone in school?

05:17:48  15          THE DEFENDANT:  I have gone to 11th grade.

05:17:50  16          THE COURT:  So you read, write, and understand

05:17:52  17  English?

05:17:53  18          THE DEFENDANT:  Yes, I do, Your Honor.

05:17:54  19          THE COURT:  Are you currently under the care of a

05:17:56  20  doctor or a physician for any medical condition?

05:18:00  21          THE DEFENDANT:  No, Your Honor.

05:18:01  22          THE COURT:  Are you currently being treated for any

05:18:03  23  psychiatric problem or mental health -- or mental illness?

05:18:10  24          THE DEFENDANT:  No, Your Honor.

05:18:11  25          THE COURT:  Have you consumed any alcohol or taken any

—TRANSCRIBED FROM DIGITAL RECORDING—

05:18:16  1  prescribed medication, controlled -- or controlled substances

05:18:21  2  in the last 24 hours?

05:18:23  3          THE DEFENDANT:  No, Your Honor.

05:18:25  4          THE COURT:  Mr. DeGrave, you're informed that you're

05:18:27  5  charged in a three-count compliant as follows:

05:18:31  6          In Count One with Knowingly Entering or Remaining in

05:18:37  7  any Restricted Building or Grounds Without Lawful Authority in

05:18:39  8  violation of Title 18 United States Code § 1752(a)(1) and § 2;

05:18:53  9  in Count Two with Violent Entry and Disorderly Conduct on

05:19:02 10  Capital Grounds in violation of Title 40 United States Code

05:19:12 11  § 5 -- 5104(e)(2)(D), (E), (F), and (G); and in Count Three

05:19:25 12  with Obstruction of Law Enforcement During a Civil -- During

05:19:28 13  Civil Disorder in violation of Title 18 United States Code

05:19:36 14  § 231(a)(3).

05:19:37 15          Mr. DeGrave, have you received a copy of that

05:19:40 16  complaint?

05:19:42 17          THE DEFENDANT:  I have, Your Honor.

05:19:43 18          THE COURT:  Have you read it?

05:19:45 19          THE DEFENDANT:  Yes, I have.

05:19:46 20          THE COURT:  Mr. DeGrave, you're advised of your rights

05:19:49 21  as follows:

05:19:49 22          You're not required to make any statement about this

05:19:54 23  charge, either here in open court or to any law enforcement

05:19:58 24  officer.  Anything you do say can be used against you.

05:20:02 25          Because this case was brought from a different

—TRANSCRIBED FROM DIGITAL RECORDING—

05:20:05  1   district from where you were arrested, in this district, you

05:20:08  2   have the right to an Identity Hearing at which the government

05:20:11  3   will be required to show that you are, in fact, the person

05:20:14  4   named in the complaint.  This Identity Hearing is not merely to

05:20:17  5   establish that your name is Nathaniel DeGrave, but rather that

05:20:24  6   you are, in fact, the person charged in the complaint.  You

05:20:27  7   may, if you so choose, waive your right to that Identity

05:20:30  8   Hearing in this district and proceed directly to the District

05:20:33  9   of Columbia to contest the charges.

05:20:34  10       You also have a right to a Preliminary Hearing in this

05:20:38  11  district at which the government will be required to provide

05:20:42  12  evidence that there is probable cause to believe you committed

05:20:44  13  the crime charged in the complaint.  At the Preliminary

05:20:47  14  Hearing, you have the right to cross-examine any adverse

05:20:52  15  witnesses against you and to subpoena witnesses to appear on

05:20:56  16  your behalf and to introduce evidence on your behalf at that

05:21:00  17  hearing.  You may elect to have the Preliminary Hearing

05:21:02  18  conducted in the District of Columbia where the prosecution is

05:21:05  19  pending.  In the event an Indictment is filed against you

05:21:10  20  regarding the charges contained in the complaint, the

05:21:12  21  Preliminary Hearing will be vacated and you will appear before

05:21:14  22  the Court to be arraigned on the Indictment and to enter a plea

05:21:19  23  to any charges contained in the Indictment.

05:21:23  24       Because you are charged in the District of Columbia

05:21:28  25  and you were arrested in the District of Nevada, you are

—TRANSCRIBED FROM DIGITAL RECORDING—

05:21:32 1   further advised that under Rule 20 of the Federal Rules of

05:21:36 2   Criminal Procedure a prosecution may be transferred from the

05:21:38 3   district where the complaint has been filed to the district

05:21:41 4   where the defendant is arrested if the defendant states in

05:21:43 5   writing he wishes to plead guilty or no contest and to waive a

05:21:47 6   trial in the district where the complaint is pending, and the

05:21:50 7   defendant consents in writing in the court in the district of

05:21:55 8   the arrest and the district of the arrest may dispose of the

05:21:59 9   case.  Now, if you wish to do that, you need the consent of

05:22:08 10  both the United States Attorney in this district and the

05:22:12 11  District of Columbia.

05:22:13 12        Finally, you have the right to the assistance of legal

05:22:15 13  counsel at all stages of these proceedings that I have

05:22:18 14  described here today, and if you cannot afford a lawyer, the

05:22:21 15  Court will appoint a lawyer for you at the public's expense.

05:22:27 16        Mr. DeGrave, do you understand these rights?

05:22:31 17        THE DEFENDANT:  Yes, I do, Your Honor.

05:22:40 18        THE COURT:  And can you afford to hire an attorney at

05:22:42 19  the present time?

05:22:45 20        THE DEFENDANT:  At the moment, no, Your Honor.

05:22:46 21        THE COURT:  All right.  I have before me a Financial

05:22:49 22  Affidavit with your name at the top, what appears to be some

05:22:52 23  financial information, and a signature at the bottom.  Did you

05:22:55 24  provide financial information to Ms. Thayer so she could

05:22:59 25  complete this Financial Affidavit for my consideration?

8

—TRANSCRIBED FROM DIGITAL RECORDING—

05:23:04 1            THE DEFENDANT:  Yes, I did, Your Honor.

05:23:06 2            THE COURT:  And when you did that, did you do that

05:23:08 3    understanding you were doing it under the penalties of perjury,

05:23:10 4    meaning all that financial information you provided to her has

05:23:12 5    to be true and correct to the best of your knowledge?

05:23:16 6            THE DEFENDANT:  Yes, Your Honor.

05:23:17 7            THE COURT:  And is that information true and correct

05:23:18 8    to the best of your knowledge?

05:23:21 9            THE DEFENDANT:  Yes, it is, Your Honor.

05:23:22 10           THE COURT:  And did you give Ms. Thayer your

05:23:24 11   permission to -- her -- your permission to sign it at the

05:23:29 12   bottom indicating that that financial information is true and

05:23:32 13   correct?

05:23:34 14           THE DEFENDANT:  Yes, Your Honor.

05:23:35 15           THE COURT:  All right.  Based upon it that affidavit,

05:23:37 16   I find that you are financially unable at the present time to

05:23:41 17   retain counsel.  I'll therefore appoint the Federal Public

05:23:48 18   Defender's Office to represent you.  Ms. Thayer is an attorney

05:23:52 19   in their office and she's here today to represent you.

05:23:54 20           Have you had a chance to speak to her today regarding

05:23:56 21   the allegations contained in the complaint?

05:24:09 22           THE DEFENDANT:  Yes, Your Honor.

05:24:10 23           THE COURT:  And do you understand those allegations

05:24:12 24   and the purpose of today's hearing?

05:24:15 25           THE DEFENDANT:  Yes, Your Honor.

—TRANSCRIBED FROM DIGITAL RECORDING—

05:24:16   1         THE COURT:  Ms. Thayer, do you have any reason to
05:24:17   2    question the competency of your client to assist in his
05:24:20   3    defense, to understand the nature of the charge against him, or
05:24:22   4    understand the purpose of today's hearing?
05:24:25   5         MS. THAYER:  I do not, Your Honor.
05:24:27   6         THE COURT:  And do you waive a reading of the
05:24:29   7    complaint?
05:24:32   8         MS. THAYER:  Yes, we do.
05:24:33   9         THE COURT:  Noting the government's obligation, the
05:24:36  10    Court will advise you that under federal law, including
05:24:41  11    Rule 5(f) of the Federal Rules of Criminal Procedure, the
05:24:46  12    Supreme Court's decision in *Brady vs. Maryland* and all the
05:24:53  13    applicable decisions interpreting *Brady*, the government is
05:25:01  14    ordered to disclose to the defendant in a timely manner all
05:25:04  15    information or evidence known to the government that is either,
05:25:06  16    one, relevant to the defendant's guilt or punishment, or, two,
05:25:13  17    favorable to the defendant on the issue of guilt or punishment.
05:25:25  18    Consequences for violating either this order or the
05:25:29  19    government's obligation under *Brady* include, but are not
05:25:37  20    limited to, the following:  Contempt, sanction, referral to a
05:25:46  21    disciplinary authority, adverse jury instruction, exclusion of
05:25:55  22    evidence and/or dismissal of charges.  A written order will
05:26:01  23    follow.
05:26:03  24         The Court will determine whether there is a date
05:26:06  25    necessary for a hearing in D.C. depending on a detention

—TRANSCRIBED FROM DIGITAL RECORDING—

05:26:21  1  determination.

05:26:21  2          On the matter of pretrial release, what is the

05:26:24  3  government's position?

05:26:36  4          MR. DICKINSON:  The government seeks detention,

05:26:39  5  Your Honor.

05:26:39  6          THE COURT:  And are you ready to proceed today?

05:26:42  7          MR. DICKINSON:  Yes, Your Honor.

05:26:43  8          THE COURT:  Ms. Thayer, are you ready to proceed?

05:26:46  9          MS. THAYER:  Yes, Your Honor.

05:26:46 10          THE COURT:  And have you gone over the

05:26:49 11  Pretrial Services report with your client?

05:26:51 12          MS. THAYER:  Yes.

05:26:51 13          THE COURT:  And did you have an opportunity to review

05:26:53 14  the government's detention memorandum found at Document 1?

05:26:57 15          MS. THAYER:  I did, Your Honor.

05:26:58 16          THE COURT:  All right.  I will hear -- and I asked if

05:27:01 17  you're ready to proceed; correct?  You're ready to go?

05:27:08 18          MS. THAYER:  Yes.

05:27:09 19          THE COURT:  All right.  Thank you.

05:27:09 20          Mr. Dickinson.

05:27:11 21          MR. DICKINSON:  Yes, Your Honor, same -- same with

05:27:19 22  our -- technical difficulties, the government is going to rely

05:27:33 23  strongly on the fact that the Court and Ms. Thayer have read

05:27:37 24  the complaint in this case as well as the government's

05:27:39 25  detention memo.  Just wanted to point out a few things.

─TRANSCRIBED FROM DIGITAL RECORDING─

05:27:43  1          First, obviously, the conduct the defendant engaged in

05:27:46  2    is -- is extremely troubling.  He was part of the mob that

05:27:50  3    stormed the United States Capitol on the 6th objecting to the

05:27:58  4    certification of the president, endangering members of

05:28:06  5    Congress, the vice president, the vice president-elect.

05:28:10  6          The defendant -- this was premeditated.  The defendant

05:28:16  7    was in videos right with his -- with a Ronald Sandlin, who's

05:28:28  8    appeared before this Court today.  Mr. Sandlin made sort of

05:28:31  9    more aggressive remarks than Mr. DeGrave.  Mr. DeGrave was

05:28:42  10   sitting right there.  He takes the camera.  He says, "We are

05:28:45  11   protecting the country.  If the shit goes down, I say, 'bring

05:28:48  12   it.'  We are not silent anymore."  He's right there when

05:28:55  13   Mr. Sandlin is discussing that they want to take the Capitol

05:29:00  14   later in the day.

05:29:02  15         One thing is the defendant here was dressed in

05:29:05  16   tactical gear, full body armor, a helmet, and a face mask.

05:29:14  17         The felony he's charged with relates to his assaulting

05:29:17  18   of an officer/officers in the Capitol.  They get in a shoving

05:29:28  19   match.  The defendant then, where he's in full tactical gear,

05:29:34  20   including the helmet, raises his hands like a boxer and stands

05:29:40  21   off.  That picture is in the complaint.  And then after some

05:29:51  22   time -- which I don't believe this is in the complaint -- the

05:29:56  23   defendant pounds his chest and at that point he lifts off his

05:30:00  24   helmet revealing that it is the defendant.

05:30:04  25         Needless to say, if someone wants to protest in body

TRANSCRIBED FROM DIGITAL RECORDING

05:30:07  1   armor, to each their own.  However, when the defendant's

05:30:13  2   dressed like this and storms the Capitol, it clearly sends a

05:30:18  3   message, it's intimidating, and then he assaults an officer.

05:30:21  4        Both the defendant -- the defendant started deleting

05:30:26  5   his social media postings shortly thereafter regarding the

05:30:30  6   events of that day.

05:30:31  7        Note that he traveled all the way from Nevada to the

05:30:33  8   District of Columbia to engage in this behavior.  Again, the

05:30:38  9   evidence is overwhelming that he was going to D.C. to look for

05:30:45  10  trouble with others, and did just that, in an unprecedented

05:30:50  11  attack on this country.

05:30:53  12       He shows no respect for the law.  There's nothing to

05:30:56  13  give this Court any satisfaction that he will obey the orders

05:31:00  14  of the Court.

05:31:01  15       Real quickly, looking at the Pretrial Services report,

05:31:13  16  little to no verification.  Was not able to talk to the

05:31:16  17  roommate.  The one friend they did talk to, I'll just note,

05:31:19  18  said that he's not -- the defendant's not militant in any way.

05:31:26  19  The only way to describe what the defendant did on the 6th is

05:31:29  20  militant.

05:31:41  21       There's no details on his online business.  He

05:31:43  22  provided nothing of any detail about what this work entails, if

05:31:50  23  he's earning income, et cetera.

05:31:53  24       He lost his active passport.  He has international

05:31:56  25  travel.

———TRANSCRIBED FROM DIGITAL RECORDING———

05:31:58  1          So, in short, the government does not believe the

05:32:01  2   Court can fashion conditions or a combination of conditions

05:32:14  3   related to releasing this defendant.

05:32:16  4          THE COURT:  Thank you, Mr. Dickinson.

05:32:17  5          Ms. Thayer.

05:32:20  6          MS. THAYER:  Thank you, Your Honor.

05:32:20  7          I'd like to begin by taking one step back to the

05:32:25  8   government's motion for a Detention Hearing in the very first

05:32:27  9   place here.  The government relies in its memo on (f)(2)(B) of

05:32:39 10   the Bail Reform Act at § 1752 of the code.  That subsection

05:32:50 11   requires that the government provide some evidence that

05:32:54 12   Mr. DeGrave presents a "serious risk," that he will "obstruct

05:32:59 13   or attempt to obstruct justice."  The rest of that provision

05:33:04 14   indicates that what is really at issue here is whether this

05:33:07 15   person will be ob- --

05:33:24 16      (Videoconference terminated).

05:33:24 17          COURTROOM ADMINISTRATOR:  Hang on.  I think they

05:33:28 18   realized it, Judge.

05:34:04 19          THE COURT:  Okay.

05:34:05 20          COURTROOM ADMINISTRATOR:  You want to do this

05:34:07 21   telephonically?

05:34:09 22          THE COURT:  Not this one.  We have to be in person.

05:34:11 23   The next one maybe, but not with this and these facts and these

05:34:17 24   cases --

05:34:19 25          COURTROOM ADMINISTRATOR:  I just wasn't sure.

— TRANSCRIBED FROM DIGITAL RECORDING —

05:34:21  1          THE COURT:  -- so we --

05:34:33  2          COURTROOM ADMINISTRATOR:  No.  Definitely, Judge.

05:34:36  3   We'll get another one opened up again and --

05:35:32  4          THE COURT:  Get it opened and do it and then we'll see

05:36:04  5   if Ms. Thayer will do the last one telephonically.

05:36:14  6          COURTROOM ADMINISTRATOR:  Okay.

05:36:16  7          THE COURT:  But this one we have to do in person.

05:36:18  8          COURTROOM ADMINISTRATOR:  Definitely, Judge.

05:36:32  9          THE COURT:  And that IT has to -- this has to --

05:37:11 10          COURTROOM ADMINISTRATOR:  I will -- I will talk to

05:37:12 11   them, Judge.

05:41:43 12      (Recess taken from 4:55:02 p.m. till 5:07:51 p.m.)

05:41:43 13          THE DEFENDANT:  Yes, I can, Your Honor.

05:41:44 14          THE COURT:  And Mr. DeGrave, I apologize.  We are

05:41:46 15   having problems with the equipment.  It keeps kicking us off.

05:41:54 16   Hopefully, we can finish the hearing before it does that.

05:41:57 17          Ms. Thayer, you were telling me why -- well, just

05:42:02 18   continue if you remember where you were at in your argument.

05:42:07 19   You had just started.

05:42:08 20          MS. THAYER:  I do, Your Honor.  And just for the

05:42:11 21   record, I was just lodging an objection about the government's

05:42:16 22   threshold to meet some sort of obstruction showing for in the

05:42:20 23   future that there would be obstruction in this case, and I

05:42:25 24   don't think they've done that.  All they've cited is the

05:42:31 25   alleged conduct that occurred on November 6th, which had

—TRANSCRIBED FROM DIGITAL RECORDING—

05:42:35  1  nothing to do with the administration of this case or sort of a

05:42:44  2  pattern of conduct where he would do so in the future.

05:42:48  3      So, with that preliminary matter objected to, I would

05:42:52  4  just like to focus more -- more importantly, if the only

05:43:28  5  reason that we're here under the preponderance or

05:43:58  6  (unintelligible) standards that apply.

05:44:02  7      Turning first to the risk of non-appearance, the

05:44:05  8  pretrial officer does recommend that Mr. DeGrave could be a

05:44:10  9  risk of non-appearance but there are surely conditions that

05:44:15 10  could be imposed that would alleviate any of those risk.  And

05:44:18 11  the government hasn't rebutted that evidence or anything in the

05:44:21 12  report with -- with any other evidence or proffer that would

05:44:25 13  show that he is actually a risk of non-appearance.  So the

05:44:29 14  government essentially provided to this Court a closing

05:44:32 15  argument that would be a preview for their trial case, but that

05:44:38 16  is not actually relevant to the risk of non-appearance and, so,

05:44:42 17  the government has not met its burden, even under

05:45:12 18  preponderance, to show that, especially in light of Pretrial's

05:45:18 19  recommendation.

05:45:18 20      And, so, I'd like to focus more on the danger aspect,

05:45:22 21  which I actually think that the pretrial report, the

05:45:27 22  recommendation might be in part driven by what I would say is

05:45:32 23  an error in the report.  At Page 3, there is a discussion

05:45:38 24  about. . . the AUSA in this case -- I believe that is

05:45:50 25  Mr. Dickinson and he can correct me if I'm wrong -- that he

─TRANSCRIBED FROM DIGITAL RECORDING─

05:45:58  1   reported that there was a search of my client's home and they

05:46:03  2   found a lawfully registered firearm in his nightstand.  But

05:46:12  3   then, the report goes on to state that it should be noted the

05:46:18  4   defendant self-reported there are no weapons at his residence.

05:46:22  5        It is my understanding, actually, that Mr. DeGrave

05:46:24  6   was interrogated after he was interviewed -- or after he was

05:46:29  7   arrested and admitted to precisely where that firearm was

05:46:33  8   located, even saying it was in -- next to the nightstand.  So,

05:46:36  9   that, to me -- of course, I do not have the discovery in this

05:46:40  10  case yet, the government is the only one with the recorded --

05:47:13  11  oh, well, I would assume recorded, I guess we don't know --

05:47:27  12  with any sort of record of the interrogation, but that is a

05:47:31  13  very crucial fact to me because -- especially because

05:47:34  14  Mr. DeGrave admitting he has a lawfully registered firearm and

05:47:43  15  it -- and telling them exactly where it is.

05:47:45  16        I would submit that once that fact is corrected, then

05:47:48  17  the dangerousness drops off because all that is left is the

05:47:56  18  government's closing argument about the nature of the alleged

05:48:00  19  offenses.  And, of course, that is a factor and it can be an

05:48:03  20  important one, but it is just one of the factors.  The Court

05:48:06  21  has to look at everything before it, and Mr. DeGrave is not

05:48:09  22  dangerous.

05:48:18  23        And before I move on from the offenses, I'd like to

05:48:21  24  further contextualize them.  I've pulled up the statutes and

05:48:25  25  the very -- the first count is actually a wobbler, so it could

—TRANSCRIBED FROM DIGITAL RECORDING—

05:48:38 1  be a felony or a misdemeanor depending on whether it's an

05:48:42 2  attempt and conspire to enter grounds without lawful authority.

05:48:50 3  It could be a felony or misdemeanor depending on what is proven

05:48:55 4  at trial.  So that is not as serious of a charge as the

05:49:00 5  government's complaint would indicate.

05:49:01 6       The same is true -- or, actually, and for Count Two,

05:49:05 7  Violent Entry and Disorderly Conduct, that actually is a

05:49:13 8  misdemeanor that only carries 6 months in jail as the highest

05:49:16 9  penalty.

05:49:17 10       Count Three is the only pure felony that is charged,

05:49:21 11  and the statutory cap is not more than 5 years.

05:49:24 12       So as this Court is aware, those are quite low

05:49:28 13  statutory caps for federal offenses, and that must factor in

05:49:36 14  that although, of course, the conduct here is serious and it is

05:49:40 15  a federal offense and what happened is serious, I'm not trying

05:49:47 16  to mitigate the allegations, but the reality is these are not

05:49:51 17  offenses that are charged in a serious manner and that should

05:50:02 18  not be -- the facts cannot overshadow the actual legal

05:50:16 19  guidelines at play here, which is that this is mostly

05:50:19 20  misdemeanor conduct that is charged, allegations.

05:50:22 21       And then that turns me to the actual factual

05:50:25 22  allegations in the complaint.  At Page 2, there is sort of a

05:50:55 23  passive voice about a shoving match between my client and other

05:51:01 24  charged individuals and the police.  I would admit -- I would

05:51:07 25  submit, though, that there's no screenshot of the alleged

—TRANSCRIBED FROM DIGITAL RECORDING—

05:54:05  1    shoving match.  However, there is a screenshot of my client

05:54:09  2    allegedly putting up his fists and beating his own chest, which

05:54:13  3    I would submit is not anything to the officer, but, in fact,

05:54:19  4    hitting his own self, which is not showing he's a danger to

05:54:24  5    others.  So, on the -- the one allegation that the government

05:54:31  6    has where he may have -- where he's alleged to have shoved an

05:54:34  7    officer, there's not actually corroborating proof with a

05:54:41  8    screenshot and if it existed, I would submit it would be in

05:54:44  9    this complaint because there are screenshots of less egregious

05:54:56  10   conduct.  So the Court should take that into account that this

05:55:02  11   was a huge group and it will be unclear who was shoving who,

05:55:08  12   especially as this Court knows just from being at a concert,

05:55:12  13   there's momentum going with the group.  You can't necessarily

05:55:17  14   ascribe intent to that shoving, and that's the only physical

05:55:24  15   conduct the Court has -- or the government has identified.

05:55:27  16          I'd like to also point out, of course my client has

05:55:32  17   almost no criminal history.  He has a couple of

05:55:35  18   non-prosecutions for shoplifting as a youth and also when he

05:55:44  19   was 19.  So there's -- there's just not a risk of a pattern of

05:55:49  20   this behavior.  He's now 31.  So, this is -- this is not

05:56:01  21   something the Court should be concerned about, especially if

05:56:07  22   the Court fashioned a condition saying stay away from anyone

05:56:10  23   else who you know was, you know, charged in this event, or

05:56:18  24   if -- something to keep him away from the group because even as

05:56:21  25   his friend stated in the report, Mr. Fleming, that he's -- he's

─────TRANSCRIBED FROM DIGITAL RECORDING─────

05:56:47 1  not -- he wouldn't have been a leader in this, he would have

05:56:52 2  been a follower.  So maybe at best, he's got -- at worst he got

05:57:03 3  swept up in this.  So isolating him away from anyone else

05:57:08 4  charged in this conduct I think would be more than sufficient

05:57:12 5  to alleviate any concerns the Court would have, and there's

05:57:19 6  just no indication that Mr. DeGrave, now that, of course, he's

05:57:30 7  sat in federal custody, would engage in any sort of dangerous

05:57:35 8  behavior at this point moving forward.

05:57:39 9          And we'd just ask that the Court release him to his

05:57:43 10  home where he's lived for 4 years.  I was not able to -- my

05:57:46 11  investigator couldn't find a phone number for his roommate.  He

05:57:51 12  doesn't know it by heart.  To me, that is very common nowadays.

05:57:56 13  I do not know many numbers by heart either because they're all

05:57:59 14  just saved in our smartphones, but I do think that there's --

05:58:04 15  that Probation -- or that Pretrial was able to confirm he's

05:58:16 16  lived there and there's no concern of any -- and I believe he

05:58:22 17  was arrested there, so, there's no doubt that's his home and

05:58:25 18  that he can be supervised there.

05:58:27 19          So, unless the Court has questions, I would submit on

05:58:30 20  that.

05:58:33 21          Thank you.

05:58:33 22          THE COURT:  All right.  No questions.

05:58:34 23          Mr. Dickinson.

05:58:38 24          MR. DICKINSON:  Just briefly, Your Honor.

05:58:40 25          The government -- the government did report the

TRANSCRIBED FROM DIGITAL RECORDING

05:58:41  1  firearm because Pro- -- Pretrial, they always ask if we knew

05:58:48  2  that there's a firearm in the house and it is correct, the

05:58:52  3  government -- law enforcement found that it was legally

05:58:54  4  registered to him, so at that point it was left depending on

05:58:58  5  the outcome of further proceedings.  Obviously, if he's going

05:59:03  6  to -- if he'd be released, the government would want the

05:59:11  7  firearms out of the home.

05:59:16  8          Just briefly, Your Honor, I mean, the government needs

05:59:21  9  to show an attempt obstruction.  And granted, it's one factor,

05:59:27  10 but this case is just different than any other I'm assuming

05:59:34  11 that's probably been before Your Honor and there's probably

05:59:37  12 never been a collective bigger attempt to obstruct justice than

05:59:41  13 what the defendant engaged in.  So, the government goes back to

05:59:46  14 that and submits it to Your Honor.

05:59:48  15         THE COURT:  All right.  The Court's reviewed the

05:59:52  16 government's detention memorandum found at Document No. 1, the

05:59:58  17 Pretrial Services report, the complaint, has considered the

06:00:03  18 arguments of the parties.

06:00:04  19         The Court does find by a preponderance of the evidence

06:00:06  20 that he is a risk of non-appearance based upon the following:

06:00:09  21         First, the lack of confirmation or verification of his

06:00:47  22 living arrangements, the fact that they could not or nobody

06:00:54  23 could figure out or contact his roommate.  While it's

06:00:59  24 apparently clear he lives there, the circumstances surrounding

06:01:00  25 that are unclear to the Court.  More importantly, the lack of

—TRANSCRIBED FROM DIGITAL RECORDING—

06:01:09  1   confirmation about his employment, his income, and the -- the

06:01:15  2   vague nature of what he's doing for a living, his possession of

06:01:21  3   a passport, extensive foreign travel, his substance use

06:01:27  4   history, and I think the facts and circumstances of this case

06:01:30  5   are such that the Court finds by a preponderance of the

06:01:33  6   evidence he is a risk of non-appearance.

06:01:35  7       The Court also finds that he's a danger to the

06:01:37  8   community based upon the nature of the instant alleged offense

06:01:39  9   and the substance use history.

06:01:41  10      Counsel points out, and correctly so, that the nature

06:01:48  11  of the offense is but one consideration, is the least important

06:01:53  12  consideration, but the Court cannot conceive of any similar

06:01:56  13  type of offense such as storming the Capitol with a mob of

06:02:01  14  people intent on overturning a lawful election and doing so

06:02:06  15  with whatever means necessary, including violence.  In

06:02:10  16  preparation for that, this young man wears full body armor,

06:02:13  17  tactical gear, along with a face mask in anticipation of that.

06:02:16  18  And, so, the Court does find that given the nature and

06:02:20  19  circumstances and allegations in this case, they do rise to the

06:02:28  20  level -- notwithstanding what the Bail Reform Act directs me to

06:02:32  21  do -- to the level that he is a danger by clear and convincing

06:02:36  22  evidence.

06:02:37  23      And I also find that he is a risk to obstruct the

06:02:42  24  government and obstruct justice as a result of not only his

06:02:45  25  conduct, which is extensive in preparing for what happened on

—TRANSCRIBED FROM DIGITAL RECORDING—

06:02:47  1    this date, but in what he did afterwards, including deleting

06:02:51  2    social media postings and traveling back to Las Vegas.  And,

06:02:55  3    so, I do find that he's a risk to obstruct as well.

06:02:58  4         Furthermore, I find that there are no condition or

06:03:00  5    combination of conditions that would address these concerns.

06:03:04  6    As I indicated in the last case, given the nature of the

06:03:06  7    allegations and the facts and evidence presented to the Court

06:03:08  8    to support those allegations, even if I thought conditions

06:03:11  9    would address these concerns, I'm not convinced he would follow

06:03:14 10    them.

06:03:14 11         The man, as I indicated, went to Washington, D.C. in

06:03:18 12    full body armor and face mask to disrupt a lawful election with

06:05:28 13    a mob of other people, with whatever -- by whatever means they

06:05:35 14    found appropriate.  The facts of this case reflected he has an

06:05:38 15    utter disregard and lack of respect for some of the most

06:05:42 16    important institutions in our country and more importantly, a

06:05:49 17    lack of respect for the laws of this nation.  And with that

06:05:52 18    lack of respect, the Court cannot conceive and isn't convinced

06:05:56 19    that he would respect this institution, the judiciary, any more

06:06:12 20    than he's respected all the other institutions and that he

06:06:16 21    would take conditions seriously or follow the conditions if I

06:06:19 22    were to impose them as a condition of release.

06:06:22 23         And, so, I do find that he's a danger and a flight

06:06:25 24    risk, and a risk to obstruct justice such that no combination

06:06:35 25    of conditions will address those concerns.  I will detain you

─TRANSCRIBED FROM DIGITAL RECORDING─

06:06:39  1    pending your transportation back to the District of Columbia to

06:06:42  2    face these charges.  I will ask Mr. Dickinson to provide a

06:06:46  3    report to the Court in 30 days if he's not transferred back

06:06:49  4    outlining when the Court -- or when the government thinks he

06:06:52  5    will be brought back to Washington, D.C.

06:06:55  6           I do have, Ms. Thayer, a waiver of the Identity

06:06:59  7    Hearing.  Do I understand it correctly, you would like to have

06:07:02  8    a Preliminary Hearing in this district?

06:07:02  9       (Brief pause in proceedings).

06:07:09  10          THE COURT:  Ms. Thayer?

06:07:11  11          Everybody stopped, Jerry.

06:07:15  12          COURTROOM ADMINISTRATOR:  Gosh.  No, they're moving,

06:07:18  13    Judge.  We've lost you for some reason.  I know you're on

06:07:23  14    there, but you're not on my screen, Judge, so I don't know

06:07:30  15    what's going on.

06:07:38  16          THE COURT:  Mr. DeGrave, can you hear me?

06:07:42  17          Boy, I got to tell you. . .

06:10:51  18       (Videoconference terminated).

06:10:51  19          THE COURT:  All right, folks.  Apologize again.  We

06:10:54  20    were kicked off.

06:10:55  21          Everybody hear us okay?

06:10:57  22          So I had made my record on the detention.  Did

06:11:00  23    everybody hear that before we were switching to the waiver?

06:11:03  24       (No audible response).

06:11:23  25          THE COURT:  All right.  So, Ms. Thayer, I have a

─TRANSCRIBED FROM DIGITAL RECORDING─

06:11:27  1  waiver for the Identity Hearing.  Did you, indeed, want the

06:11:29  2  Preliminary Hearing to be scheduled in this court?

06:11:34  3          MS. THAYER:  I believe. . . yes, for now.  Is it still

06:11:40  4  a 14-day deadline?  I apologize, Your Honor.  I haven't had a

06:11:48  5  Rule 5 with a complaint in awhile.

06:11:57  6          THE COURT:  Well --

06:11:59  7          MS. THAYER:  So -- so yes, we'd like to not waive

06:12:04  8  that.  I'd like to at least talk to his D.C. attorneys when

06:12:11  9  they get appointed.

06:12:14 10          THE COURT:  Well, I can certainly set it, but he's not

06:12:18 11  going to be taken back or transported until we have that

06:12:20 12  hearing if everything's finalized here.  So -- but if we set

06:12:24 13  it, you can always file a written waiver and we can vacate it

06:12:27 14  and I can issue an order sending him back if that's how you

06:12:33 15  decide you want to go as well.

06:12:37 16          MS. THAYER:  Yes.  If that's okay with Your Honor, can

06:12:40 17  we please set it today and then I will speak with my client and

06:12:46 18  we'll decide where to go from there and let the Court and the

06:12:49 19  government know as soon as possible.

06:12:52 20          THE COURT:  All right, Jerry.  So let's set that.

06:12:57 21          COURTROOM ADMINISTRATOR:  Okay.  Judge, I'm just going

06:13:02 22  to mute this real quick.

06:13:05 23          THE COURT:  All right.

06:13:16 24     (Brief pause in proceedings).

06:14:05 25          THE COURT:  All right.  We were just looking at dates,

——TRANSCRIBED FROM DIGITAL RECORDING——

06:14:15  1  and the -- 2 weeks from today is February 15th, and that is

06:14:20  2  President's Day, and so we will set it for the 16th.

06:14:24  3       Mr. Dickinson, I intend, at this stage, to set it for

06:14:27  4  3 o'clock, understanding that that's 6 o'clock back in the

06:14:32  5  east, but for now, that's when I will set it and we will see

06:14:34  6  how this plays out with what you need via witnesses or timing

06:14:42  7  or the like.

06:14:44  8       And, so, Jerry, give us a date for the Preliminary

06:14:51  9  Hearing.

06:14:51 10       COURTROOM ADMINISTRATOR:  Your Honor, that will be

06:14:52 11  3:00 p.m., and it will be via videoconferencing.

06:14:58 12       THE COURT:  On Tuesday, February 16th, 2021.

06:15:03 13       COURTROOM ADMINISTRATOR:  I apologize, Your Honor.

06:15:04 14       THE COURT:  No problem.

06:15:05 15       All right.  You have waived the Identity Hearing and

06:15:08 16  the production of a warrant, so the identity issue has been

06:15:11 17  waived but -- and Mr. DeGrave, did you talk to Ms. Thayer about

06:15:15 18  your right to an Identity Hearing and waiving that right

06:15:18 19  indicating that all you're admitting is you're the

06:15:23 20  Nathaniel DeGrave that they're looking -- that's named in that

06:15:27 21  complaint and you're not admitting anything else?  Do you agree

06:15:34 22  to that?

06:15:38 23       THE DEFENDANT:  Yes, Your Honor.

06:15:39 24       THE COURT:  And you talked to Ms. Thayer about that?

06:15:45 25       Did you talk to Ms. Thayer about that?

26

————TRANSCRIBED FROM DIGITAL RECORDING————

06:15:48   1              THE DEFENDANT:  Yes, Your Honor.

06:15:50   2              THE COURT:  All right.  And, so, the Court will find

06:15:51   3    that that waiver is voluntarily and knowingly given after

06:15:56   4    discussing his right to have an Identity Hearing and discussing

06:15:59   5    that right with Ms. Thayer and, so, we'll set the matter for a

06:16:06   6    Preliminary Hearing.

06:16:08   7              You will be remanded to the custody of the marshal

06:16:10   8    pending that Preliminary Hearing.  Of course, if you decide to

06:16:13   9    waive that, we can remand you immediately and that will speed

06:16:16  10    the process of getting you back to D.C.

06:16:18  11              Mr. Dickinson, you can hold that Status Report.  I

06:16:23  12    will make a further order on that depending on when we have a

06:16:26  13    prelim or what happens on down the line.

06:16:28  14              Is there anything else from the government on this

06:16:30  15    matter?

06:16:30  16              MR. DICKINSON:  No, Your Honor.  Thank you.

06:16:31  17              THE COURT:  All right.  Anything else from the

06:16:33  18    defense, Ms. Thayer?

06:16:35  19              MS. THAYER:  No, Your Honor.

06:16:36  20              THE COURT:  All right.  That concludes this matter.

06:16:39  21              Sir, if you can knock on that door and get their

06:16:42  22    attention.

          23         (Proceedings adjourned at 5:32:20 p.m.)

          24    ///

          25    ///

—TRANSCRIBED FROM DIGITAL RECORDING—

C E R T I F I C A T E

    I, Heather K. Newman, court-approved transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Heather K. Newman       2-9-2021
Heather K. Newman         Date